UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMANDA JACKS and BARBARA THOMASON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-1925-B |
| | § | |
| MINEARC SYSTEMS AMERICA LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Alter or Amend Judgment (Doc. 99). Having considered the briefing, the Court **GRANTS in part** the Motion. The Court also **AMENDS** and **SUPPLEMENTS** its prior Memorandum Opinion & Order (Doc. 95) to the extent explained below.

## I.

## BACKGROUND

This is an employment discrimination case brought by Plaintiffs Amanda Jacks and Barbara Thomason against Defendant MineArc Systems America LLC ("MineArc"). The full factual background is described in the Court's March 2026 Memorandum Opinion and Order that ruled against Plaintiffs. *See* Doc. 95, Mem. Op. & Order, 1-5. Jacks now moves to set aside the resulting final judgment in part. The relevant procedural history is summarized below.

Plaintiffs asserted five causes of action against MineArc: (1) disability discrimination by hostile work environment under the Americans with Disabilities Act ("ADA") and Chapter 21 of

the Texas Labor Code (the "TCHRA"); (2) sex discrimination by hostile work environment under Title VII and the TCHRA; (3) termination as a result of disability discrimination in violation of the ADA and the TCHRA; (4) wrongful discharge for refusing an unlawful order under the cause of action recognized in *Sabine Pilot Services, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985); and (5) termination as a result of sex discrimination.[1] Doc. 10, Second Am. Compl. ¶¶ 123-40, 149-58, 180-87.

MineArc moved for summary judgment on all of Plaintiffs' claims. *See generally* Doc. 49, Mot. Summ. J. In its Memorandum Opinion and Order, the Court granted MineArc's summary judgment motion in full. *See* Doc. 95, Mem. Op. & Order, 22. The Court addressed each claim except for the termination as a result of sex discrimination. That same day, the Court issued a Final Judgment that discharged MineArc of liability for all claims. Doc. 96, Final J., 1.

In issuing the Final Judgment, the Court implicitly denied both Jacks's and Thomason's termination as a result of sex discrimination claim. *See Babb v. Dorman*, 33 F.3d 472, 476 n.6 (5th Cir. 1994) (noting that a district court implicitly denies a claim not explicitly addressed in its order when it enters a final judgment disposing of all claims); *see also McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 351 (5th Cir. 2004) ("[A] a decision that does not specifically refer to all pending claims will be deemed final if it is clear that the district court *intended*, by the decision, to dispose of all claims." (citations omitted)).

Twenty-eight days from the issuance of the Final Judgment, Jacks moved for reconsideration under Federal Rule of Civil Procedure 59(e) based on the Court's failure to include its reasoning for

[1] In their summary judgment response, Plaintiffs voluntarily withdrew their retaliation claims, as well as all claims arising under the Family Medical Leave Act. *See* Doc. 54, Pls.' Resp., 1-2.

the grant of summary judgment to MineArc on her termination as a result of sex discrimination claim. *See* Doc. 99, Mot. Am. J., 1. MineArc has filed a response (Doc. 104), and Plaintiffs have filed a reply (Doc. 109). The Court reviews the Motion below.

## II.

## LEGAL STANDARD

### A. *Federal Rule of Civil Procedure 59(e)*

The Federal Rules of Civil Procedure do not recognize a general motion for reconsideration. *St. Paul Mercury Ins. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). "Rather, courts treat such motions as motions pursuant to either [Federal Rule of Civil Procedure] . . . 59(e)[] or 60 depending on when the motion is brought and the type of order that the party requests the Court to reconsider." *Mehar Holdings, LLC v. Evanston Ins.*, No. 5:16-CV-491-DAE, 2016 WL 5957681, at *2 (W.D. Tex. Oct. 14, 2016) (citations omitted). "If the motion was filed within twenty-eight days after the entry of the judgment, the motion is treated as though it was filed under Rule 59, and if it was filed outside of that time, it is analyzed under Rule 60." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012) (citing *Tex. A & M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003)). Here, because Plaintiffs filed their reconsideration motion within the applicable twenty-eight-day timeframe, the Court evaluates the motion under Rule 59(e). *See id.*

"Rule 59(e) motions serve the narrow purpose of permitting 'a court to alter or amend a judgment to (1) accommodate an intervening change in controlling law, (2) account for newly discovered evidence, or (3) correct a manifest error of law or fact.'" *Anderson v. Octapharma Plasma, Inc.*, No. 3:19-CV-2311-D, 2021 WL 4219700, at *1 (N.D. Tex. Sept. 16, 2021) (Fitzwater, S.J.) (other citation omitted) (quoting *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019) (per

curiam)). The Fifth Circuit has consistently held that a motion for reconsideration pursuant to Rule 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Budri v. FirstFleet, Inc.*, 860 F. App'x 306, 308 (5th Cir. 2021) (citing *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citation omitted).

*B. Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). On a motion for summary judgment, the movant has the burden to prove that no genuine dispute exists as to a material fact. *Provident Life & Accident Ins. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine dispute exists for trial, the court must view all of the evidence in the light most favorable to the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

When the nonmovant would bear the burden of proof on an issue at trial, the movant can secure summary judgment "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. For such a "no-evidence" motion, the movant does not have to raise evidence to "negate the elements of the nonmovant's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (emphasis and citation omitted). It need only assert an "absence of facts supporting the elements of the plaintiff['s]

theory of recovery." *Id.* (citation omitted). The non-moving party with the burden of proof at trial must then "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). The non-moving party's proffered evidence "must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial." *Id.* (citations omitted).

Finally, the evidence that any party proffers in favor or against summary judgment "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citation omitted).

## III.

## ANALYSIS

### A. *The Court Grants in Part Jacks's Rule 59(e) Motion Because the Court's Failure to Explain its Denial of the Claim Constitutes a Mistake of Law.*

Jacks's reconsideration motion includes two requests. First, Jacks asks the Court to issue an order explicitly addressing her termination as a result of sex discrimination claim. *See* Doc. 109, Mot. Am. J. Reply, 1. Second, Jacks asks the Court to issue an amended or altered judgment that denies summary judgment to MineArc on that claim. *See id.* Upon review of the record and applicable law, the Court grants Jacks's first request and denies her second request.

Rule 56(a) says that a "court should state on the record the reasons for granting or denying the [summary judgment] motion." The Fifth Circuit has explained that it is vital for district courts to include the reasoning for their decision in the opinions to aid appellate review. *See Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 547 F. App'x 484, 487 (5th Cir. 2013); *see also Myers v. Gulf Oil Corp.*, 731 F.2d 281, 284 (5th Cir. 1984) (noting that the Fifth Circuit has "not hesitated to

remand [a] case for an illumination of the court's analysis through some formal or informal statement of reasons" where the district court's reasoning is incomplete or missing).

Here, the Court's Memorandum Opinion and Order does not include its reasoning for the grant of summary judgment to MineArc on Jacks's termination as a result of sex discrimination claim.[2] Because the Fifth Circuit has vacated and remanded district courts for similar omissions, the Court finds that the Memorandum Opinion and Order's failure to address the alternative claim as to Jacks constitutes a mistake of law. *See Anderson*, 2021 WL 4219700, at *1. Reconsideration under Rule 59(e) is therefore appropriate. Accordingly, the Court **GRANTS** Jacks's first request and **AMENDS** and **SUPPLEMENTS** its prior Memorandum Opinion and Order (Doc. 95) with Part III, Section B of this opinion. The Court **DENIES** Jacks's second request to alter or amend the final judgment because the Court finds that Jacks has not raised a genuine dispute of material fact on her termination as a result of sex discrimination claim.

*B. Summary Judgment on Jacks's Termination as a Result of Sex Discrimination Claim is Proper Because She Has Not Raised a Genuine Dispute For Trial.*

Title VII of the Civil Rights Act forbids an employer from, among other things, terminating an employee on the basis of their sex. 42 U.S.C. § 2000e-2(a)(1).[3] Title VII "prohibits discrimination 'because of' the prohibited basis or when the basis is 'a motivating factor.'" *Moreno v. Dealer Integrated*

---

[2] The Court notes that the Memorandum Opinion and Order does not suffer the same defect as to Thomason's termination as a result of sex discrimination claim because the Court directly addressed and rejected Thomason's constructive discharge claim. *See* Doc. 95, Mem. Op. & Order, 16-19.

[3] In the Second Amended Complaint, Plaintiffs do not identify under which law they are pleading the termination as a result of sex discrimination claim. To the extent Plaintiffs assert the claim under the TCHRA in addition to Title VII, the analysis and outcome is the same. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citation omitted) (noting that TCHRA employment discrimination claims are "effectively identical to Title VII" claims); *Gerdin v. CEVA Freight, LLC*, 908 F. Supp. 2d 821, 833 (S.D. Tex. 2012) ("Because the TCHRA executes Title VII policies, claims brought under the TCHRA are analyzed in the same way as cases brought under Title VII." (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004))).

*Servs., LLC*, No. 25-20470, 2026 WL 1286835, at *2 (5th Cir. May 11, 2026) (per curiam) (quoting § 2000e-2(a)(1), (m)). "These two alternatives are known as the 'but-for' and 'mixed-motive' causation standards." *Id.* (citing *Adams v. Mem'l Hermann*, 973 F.3d 343, 352 (5th Cir. 2020)). A plaintiff can rely on circumstantial evidence to satisfy their burden under either standard. *Id.* (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345, 347 (5th Cir. 2007)).

Discrimination claims that rely upon circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (citation omitted). First, the employee must bring forth evidence to demonstrate a prima facie discrimination claim. *Id.* at 317 (citation omitted). Second, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Id.* (citation omitted). Third, the burden shifts back to the employee to show the employer's reason is pretextual. *Id.* Alternatively, an employee can show discrimination under the "modified *McDonnell Douglas* test"—the mixed-motive framework. *Stelly v. Dep't of Pub. Safety & Corr. La.*, 149 F.4th 516, 525 (5th Cir. 2025) (quotation marks and citation omitted). Under the mixed-motive framework, instead of showing pretext, an employee can carry her burden by "offer[ing] sufficient evidence to create a genuine issue of material fact that the defendant's reason, while true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic." *Id.* (citation omitted).

Here, neither party disputes that that the first two steps of the *McDonnell Douglas* framework are satisfied. Accordingly, the Court addresses only the third step and evaluates whether Jacks has created a genuine dispute of material fact as to whether her sex/gender was the "but for" cause or a "motivating factor" for her termination. *See Moreno*, 2026 WL 1286835, at *2.

*First*, pretext. To carry her burden, Jacks must "put forward evidence rebutting *each* of the nondiscriminatory reasons that the employer articulates." *See id.* at *3 (emphasis added) (quoting *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 967-68 (5th Cir. 2016)). MineArc asserts that Jacks was terminated for refusing to follow orders on multiple occasions. Specifically, Jacks (1) failed to sign her corrective action form, (2) delayed in obtaining her hazmat training; and (3) did not obtain the Biora quotes. *See* Doc. 50, Summ. J. Br., 28. Jacks disputes that she was delayed in obtaining her hazmat training, whether obtaining quotes was a job requirement, and whether failing to do so was a fair or legitimate reason for termination. *See* Doc. 55, Summ. J. Resp. Br., 9-11. Notably, Jacks does not dispute that she failed to sign the corrective action form. Indeed, she does not address that termination reason in her summary judgment response. That is fatal to her ability to raise a fact issue on pretext as an employee is required to rebut "each of the nondiscriminatory reasons [for termination] the employer articulates." *See Moreno*, 2026 WL 1286835, at *3 (citation omitted); *see also Rodriguez v. Eli Lilly and Co.*, 820 F.3d 759, 766 (5th Cir. 2016) (concluding that the employee could not raise a fact issue on pretext when she failed to challenge two of the five reasons for termination articulated by the employer). Accordingly, Jacks has not met her burden to show a genuine dispute of material fact on pretext.

*Second*, mixed-motive. To carry her burden, Jacks must make some showing that sex "was at least partially a motivating factor" to her termination. *Stelly*, 149 F.4th at 525-26. Jacks identifies three pieces of evidence that she believes create a fact issue. *See* Doc. 55, Resp. Summ. J. Br., 3-5.

First, an excerpt from Thomason's deposition testimony:

> Q: What evidence do you have that Mr. Evans does not like gay people?
>
> A: Like I said, I never had any positive interaction, communication with Kyle. He almost avoided me like a plague. I mean, he went to Amanda. When I would try to

> confront him, he would just say, "I'll get with a man about it. I'll get with a man about it." So as far as that communication, or – that's going to be with Kyle, is going to be with Amanda. She reported to him, not me.

Doc. 56, Ex. C, Thomason Dep., 133:6-12.

Second, an excerpt from Jacks's own deposition testimony:

> Q: So back to the front page of this [complaint]. You've got retaliation and sex. Let's talk about sex. Why do you believe that you were discriminated against because of your sex?
>
> A: When you constantly make fun of me working with another person that is also gay and refer to us as girlfriends, where's your girlfriend at? After I've repeatedly asked you to stop doing that and you continue doing it, that is absolutely, absolutely not okay. *When you make fun of me for wearing a ball cap and tell me I look like a dude, that is not okay*.
>
> Q: Who said that?
>
> A: Kyle.
>
> Q: And the girlfriends comments were made by Robert; is that right?
>
> A: That is Correct.
>
> . . .
>
> Q: Did Kyle make any other comments other than, look – you look like a dude?
>
> A: No, just the hat. Looking like a dude, you know, wearing a ball. Yeah.
>
> Q: Did you ever complain to anyone about Kyle making that comment?
>
> A: Yes, I complained. I told Barb about it. I told Kyle that I – told him directly that I didn't appreciate it. Jorge, I talked to him about it because he witnessed the incident right when I was walking away and I was really upset. So he knew. But I did not speak to management or HR.
>
> Q: Did Kyle ever say it again after you told him you didn't appreciate it?
>
> A: Not to my face, no.

*Id.*, Ex. B, Jacks Dep., 116:18—118:5 (emphasis added).

Third, internal corrective action forms. *See id.*, Ex. A-1, Forms, 9-15. In April 2022, more than a year before Jacks's employment at MineArc began, Norbey Alvarez informed Ian Hunt and Emily Ortiz that Robert Rodriguez, another MineArc employee, had made offense statements about Alvarez's sexuality. *See id.* at 14. In the corrective action form and a related email, Kyle Evans, Jacks's supervisor and a relevant decisionmaker for her termination, is referenced three times:

> (1) "Norbey explained he had text messaged Kyle Evans (past Supervisor) asking if someone other than Robert could be sent to work with him at the Lancaster facility, explaining that 'Robert talks too much and works too little'";
>
> (2) "Norbey also stated that Cesar Ferrer (Production Technican) had overheard Zachary Davis (Production Electrician) inform Kyle Evans that he was gay"; and
>
> (3) "There is also Mr. Zach Davis who once asked me about my sexual orientation and I answered his question, which he has been commenting on in malicious gossip to other people in the company, for example, to Mr. Kyle Evans."

*Id.* at 9-15.

Jacks cannot raise a genuine dispute of material fact because her evidence is insufficient to show that her sex "was at least partially a motivating factor" for her termination. *See Stelly*, 149 F.4th at 526. "[S]ubjective beliefs of discrimination cannot be the basis for judicial relief." *Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 870 (5th Cir. 2010). And Title VII "is not a 'general civility code.'" *Wantou v. Wal-Mart Stores Tex., LLC*, 23 F.4th 422, 433 (5th Cir. 2022) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Jacks's reliance on off-handed comments, an out-of-context deposition line, and an internal corrective action form created before her employment at MineArc began does not create more than a "scintilla of evidence" that her termination was motivated in part by discriminatory animus.

Beginning with Evan's comment that Jacks looked like a dude when she wore a ballcap, the Court is unconvinced that a reasonable factfinder could find the comment probative of

discriminatory animus. Jacks provides no context for the comment. The record does not indicate when the comment was made or whom it was made in front of. The only additional detail Jacks's testimony provides is that after she told Evans that she disliked the comment he never made it again. If this isolated comment, untethered to Jacks's work at MineArc or her termination, was sufficient to create a jury issue, Title VII would turn into a "general civility code." *Cf. Faragher*, 524 U.S. at 788 (noting that the high standard for evaluating hostility under Title VII "will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'") (citation omitted)).

Next, Thomason's deposition testimony that Evans avoided her is equally unconvincing. In the briefing, Jacks relies on an out-of-context line from Thomason's deposition to argue that a reasonable inference exists that Evans preferred working with men: "I'll get with a man about it. I'll get with a man about it." *See* Doc. 99, Mot. Am. J., 9. But the deposition testimony before and after the "I'll get with a man about it" line shows that Evans went to Jacks (Jacks is the "Amanda" referenced in the deposition testimony) and communicated with Jacks, a woman. *See* Doc. 56, Ex. C, Thomason Dep., 133:6-12. Even if that is exactly what Evans said to Thomason, it does not overcome the fact that he avoided Thomason to go talk with *Jacks*. As Jacks and Thomason are both openly gay women, Evans's avoidance of Thomason to go instead talk to Jacks indicates he avoided Thomason for some other reason not based on her sex. In context, the deposition line does not raise a reasonable inference that Evans preferred working with men.

Lastly, the internal corrective action forms do not save the case. Jacks argues that the Court should infer that Evans held a discriminatory animus towards gay employees from Norbey's complaints against Rodriguez. *See* Doc. 99, Mot. Am. J., 3. Evans is not the subject of the complaints.

He is merely mentioned in passing as an example of an employee who heard the alleged "malicious gossip." *See* Doc. 56, Ex. A-1, Forms, 15. Because this evidence is so tangential to the facts at hand, no reasonable factfinder could infer from it that Evans was motivated in part by a discriminatory animus when he terminated Jacks.

Under either the "but-for" or mixed-motive standard of causation, Jacks does not present sufficient evidence that her sex was a reason for her termination. Because the summary judgment evidence discussed above could not permit a reasonable factfinder to find for Jacks, summary judgment on the termination as a result of sex discrimination claim is appropriate.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** the Motion to Alter or Amend the Final Judgment (Doc. 99).

The Court **AMENDS** and **SUPPLEMENTS** its prior Memorandum Opinion & Order (Doc. 95) with Part III, Section B from this Opinion.

The Court **DENIES** Jacks's request to alter or amend the Final Judgment.

**SO ORDERED.**

**SIGNED: August 17, 2026.**

___________________________________

**JANE J. BOYLE**
**SENIOR UNITED STATES DISTRICT JUDGE**